Second case set for argument, Certain Underwriters at Lloyds, London, subscribing to policy number WN144245 versus Freedom, Nitschke. Good morning. May it please the court, Christopher Lye for Defendant Brian Nitschke, and I'd like to reserve three minutes for rebuttal. This case arises from the issue of whether a coverage exclusion for an adult family home's negligent failure to protect against and prevent intentional third party physical abuse violates Washington State public policy. And the inherent nature of this issue dictates that it should have been and should be certified to the Washington State Supreme Court under the four Murray factors. First, Judge Tallman, as you commented during the oral argument in Pacheco v. United States, issues that inherently involve public policy deterrent nations should be certified. As this court's certification order subsequently said, issues that are, quote, public policy laden, should be certified. But the issue here, Mr. Love, is it not essentially draws a line between injuries to residents that are committed by employees of the group home versus liability for, I'll call it patient on patient intentional assaults. I mean, there was an insurance policy here and it certainly would have covered the injuries to plaintiff's decedent had they been committed by an employee or volunteer working at the group home, correct? I don't necessarily agree with that, Your Honor. The policy excluded coverage for any intentional physical abuse of a resident, even if it was caused by the adult family home's failure to negligent failure to supervise or control employees or third parties, such as other residents. So it wouldn't have provided... So you think the policy, that exclusion would apply even if a nurse administered lethal doses of medication to one of the group home residents and intentionally killed them? Under the plain language of the policy, yes, Your Honor. It, in no uncertain terms, excluded coverage if the cause of the injury was any intentional physical abuse or intentional third party harmful conduct. I think that's a fair reading of the, just the plain language of that exclusion. So if that's right, the question that I've been trying to figure out is, if this exclusion would be a violation of public policy as applied in one case, does that mean that the exclusion as a whole has to be invalidated as against public policy? Because I'm not sure, it seems like that the argument about being against public policy is stronger if you're talking about abuse at the hands of the home or an agent of the home versus the scenario in this case of a third party resident. And that's a great question, Judge Forrest. And as this exclusion is written, I believe that it would be invalid in any case because it not only carves out coverage for, you know, some intentional act that's committed by an actual insured, which no state will, you know, justify coverage for that because you don't want to encourage the insured to commit acts like that, but then the exclusion goes further to carve out coverage even for injuries that are caused by the home's negligent failure to protect against that sort of conduct. And in that sense, as written, it's overbroad. It's analogous to the felony driving exclusion in the Mendoza case. I'm not quite sure I read the policy that way. It seems to me that the underwriters set the premium for this particular insurance on the nature of the risk that was being insured and the distinction between negligence and intentional acts is one that other Washington cases have recognized in the past as being a legitimate reason why the insurer is not liable for intentional acts versus negligent acts. Well, that distinction based on intentional versus negligent acts, the Washington case law addressing that is talking about the conduct of the actual insured. If it's intentional conduct by the insured, it's valid to exclude coverage for that. But when we're talking about... But that's pretty standard in most insurance policies, is it not? I suspect if I looked at my homeowner's policy, I would find an exclusion if I intentionally assault my neighbor. And again, it goes back to the nature of the risk that is being underwritten here. And the Washington Supreme Court held in the Tissell case that the relevant risk isn't just the general risk to the insurer of having to indemnify a claim because that risk is inherent in any type of coverage exclusion. It's conduct-based risk. It's negligence versus intentional. Yeah, it's conduct by the insured, Your Honor. When you have an auto policy such as in Mendoza, it was an all-mobile policy. It insured for negligent driving, as all all-mobile policies do. And there was this felony driving exclusion. And Mendoza observed that, sure, in some circumstances, a felony driving charge might be predicated on some additionally risky behavior. And that was the terminology Mendoza used by the insured. Some sort of criminally reckless or intentional driving beyond mere negligence. And there, the exclusion might be enforceable. But felony driving could also be predicated simply on the severity of the injuries to the victim. And there, you're not focusing on some relevant risk that could justify exclusion. Some additional risky behavior by the insurer that alters the nature of the risk they insured. You're looking at an innocent class of victims. And that's what this exclusion does. Lloyd's agreed to insure vision for negligent operation of an adult family home. So is your position that public policy in Washington is to provide insurance coverage because this is a particularly vulnerable class of citizens, and therefore they should be insured against all harms that may befall them, whether negligent or intentional? My position is that there is an insurance mandate by Washington state regulation that requires liability insurance for acts or omissions or errors or omissions of an adult family home. But that's all negligence. And the home had a policy that did that. But it contained an exclusion for intentional, I'll call it criminal acts, criminal torts. And I don't dispute that. Again, if the exclusion was limited to excluding coverage for some intentional act by vision or its employees, that may be enforceable. But it goes too far like the exclusion in Mendoza. You answered my earlier question at the outside of your argument that the policy exclusion would probably also apply in that case if the tortfeasor was an employee who engaged in intentional misconduct. And to clarify, Your Honor, if it was an employee who was being considered and insured and they personally were seeking indemnification under the policy, the exclusion would apply. Well, the insurer is the group home, right? And the question is, when is it liable or when may it make a claim for, under its insurance policy, for conduct by its employees or volunteers or agents? And they can make a claim when they are sued for, when the home is sued for its negligent failure to supervise or control employees, residents within its custody. Did you bring that claim against the home separately? Or are we just litigating a declaratory judgment action over the... No, there is an underlying wrongful death action in Washington State Court where we have sued Vision and its owner. And is Vision tendering a defense in that action with a reservation of rights? They have tendered a defense. I believe Lloyd's has simply denied coverage. There may be a reservation of rights. On further reflection, I believe there is a reservation of rights. The wrongful death suit is stayed pending the outcome of this coverage action. But this coverage action, I guess depending on how we decide it, may be limited solely to the question of whether or not the insurer is liable for intentional acts, whether committed by another resident or somebody else. That isn't going to answer the question as to whether the group home might still be insured for errors and omissions in supervision of the residents, which would sound a negligence, would it not? Well, this coverage action wouldn't be deciding whether the home is liable for intentional acts. The whole claim against the home is predicated solely on negligence. And there be no need for this court to determine whether the home itself is liable for its own intentional acts or the intentional acts of an employee. Those simply aren't alleged or at issue. The whole basis for potential coverage under this policy is that it can be liable, but for negligent supervision, failure to control, failure to protect vulnerable residents. Why doesn't the McAllister case and others that cite that principle foreclose the argument? And there I'm sure you remember it was a bad assault and battery exclusion. And the argument was that I think it was a bar or a nightclub or something. They were negligent in allowing somebody to be there that they had reason to know was violent. And that person committed an assault. And the court said the assault and battery exclusion can apply because for negligence, you're going to have to prove an underlying assault occurred and you've got an assault exclusion. Why doesn't that apply here? Well there's no statute at issue in McAllister or any of those cases like the insurance mandate regulations here. Absent of public policy, the parties can contract for whatever coverage they want and the exclusions are enforceable. But here you have that presence of the insurance mandate. And even the district court can see that the mandate expresses a public policy of compensating individuals injured by an adult family home's negligence. I agree with you and I think there are things in the statute and the regulations that support that idea. But the problem is that the Wiscombe and the Mendoza case, which you've talked about, there was clearly a policy of compensating people who are injured on the road there. But policies were carving out exceptions for certain kinds of drivers and certain kinds of situations. That's counter to compensating people, right? People in some situations were not going to get compensated. And the courts were approving those if the exceptions were based on the risk of the insurer as opposed to some other irrational basis. So even if we find that there's a policy, that doesn't necessarily mean that every exclusion that interrupts compensation is going to be held invalid. And I agree, Judge Forrest, that again the relevant risk under Washington law, particularly the Tissel case, isn't just some general concept of risk to the insurer. And this is where the district court erred. It said any risk to the insurer is sufficient to justify exclusion, even if it does contravene a public policy. And that's simply not Washington state law. The relevant risk is some additional risky behavior, as Mendoza stated, that alters the nature of the risk insured. And here, the mere fact that the immediate proximate cause of a resident's injuries is some third party conduct doesn't inherently mean that Vision was engaged in some conduct that exceeded negligence. Just as in Mendoza, the mere fact that someone was charged with felony driving doesn't necessarily mean that they were engaged in some criminally intentional or reckless driving. Vision could still be failing to exercise reasonable care, which is what Lloyds agreed to insure it for. That was the nature of the risk insured. And a third party still harmed someone, and they can still be liable for that. The tortfeasor was convicted, was he not, and sent back to, I don't know if it was prison or to a state correctional mental facility? I believe that's correct, Your Honor. I'll double check if I have time remaining for rebuttal. He either pled guilty or was convicted by proof beyond a reasonable doubt of intentional homicide. Yes. Okay. All right. Do you want to reserve? We'll give you a minute for rebuttal. I will. Thank you, Judge. Much better. Good morning. May it please the court, my name is Kimberly Reppard. I am here on behalf of the plaintiff of Pelley, certain underwriters at Lloyds London, who I'll refer to as underwriters. This case is about whether Washington statutes and regulations governing adult family homes create a public policy requiring such homes to obtain insurance covering intentional resident-on-resident assault. I just want to jump in and sort of clarify something. Do you agree that this physical abuse exclusion would cover physical abuse caused at the hands of a direct agent of the home? I do agree. I think if you read the physical abuse exclusion as a whole, it is aimed directly at the type of act that is causing the injury. So an employee who's monitoring dinner, I think this thing happened at dinner, you know, somebody who's monitoring the dinner, whacks the guy in the head with the mug instead of another resident. And your position is the exclusion applies regardless. I think it applies to any act of intentional physical assault that causes injury. And I think that is a ubiquitous clause in many, if not most insurance policies, the intentional exclusion clause. My question to that is, if we were to conclude that that piece of it would be counter to Washington's public policy, and I'm not saying that we would, but I'm just saying if we were to say that application of the exclusion in one scenario would violate Washington public policy, does that invalidate the whole exclusion or just as applied in that scenario? And then if it applies in other scenarios like this third party actor, that could stand? Well, I mean, your specific question, Your Honor, which is, can we piece apart this exclusion and decide one way and one part of it another way and another part of it? I don't know the answer to that. I would have to research it and write. What are you asking us for? Aren't you asking us to declare that the intentional acts exclusion does not violate Washington public policy? Correct, Your Honor. I do not want to lose sight of what the actual issue is on this appeal, which is whether You would agree that the policy might well still provide coverage to the group home for errors and omissions in supervision of the residents by employees of the insurer? Hypothetically, there are numerous examples of facts where the policy might apply and apply coverage. Well, has your client accepted, maybe with a reservation of rights, the tender of the defense of the group home on that theory of liability? Underwriters is currently defending the group home under a reservation of rights. And, of course, as you've heard, the case has stayed. I think the big question with respect to the public policy analysis is whether the particular statutes and regulations in this case support a legislative declaration of public policy, not just generally, but specifically. What did the legislature say with respect to these statutes and these regulations? Because that is the crux of the public policy argument. But just to be clear, I mean, opposing counsel has said that their theory in the state case is based on negligence supervision of the resident who committed the assault. And your client has said, we don't need to cover that because of this exclusion, even though that's a negligence-based theory. You know, on appeal, it's the first time that we saw the argument. What we're really talking about is the negligence of the home and not the intentional act of the at-fault tortfeasor. I think the court can't ignore the fact that in the underlying briefing, the appellant agreed that this particular exclusion applies for any claim of physical abuse that causes harm. I would argue that this is a new issue raised on appeal, and it's a new argument that the clause somehow doesn't apply to this scenario. But there are a few cases I would... I'm sorry. I want to be clear that I'm understanding. So your argument is that plaintiff's position that this exclusion should not apply to a negligence theory is a new thing that you're just hearing about for the first time on appeal? In the underlying briefing, the appellants argued that this exclusion applies to preclude coverage for all of their claims. The intentional act of the aggressor and any contribution of the group home, I think you have to look at the language of the particular exclusion. However, our point is that no public policy was violated by this exclusion and that this is not a new thing for courts. There are numerous cases of examples where the court is looking at the particular act that's causing the injury as the question of what should or should not be covered. Your Honor brought up the McAllister case. I would also point you in the direction of the Allstate v. Rayner case, which involves a homeowner's policy and an intentional acts exclusion and a criminal acts exclusion when a gentleman shot his neighbor and her daughter. The plaintiff in that case said, well, we're also bringing a claim against the wife and that claim is for negligence. It's not related to the husband's intentional act of the shooting. And the court in that case said what you need to look at is the act that actually caused the injury. And the act that caused the injury is the intentional act and that is exactly the type of risk that insurance companies are not bargaining to cover. And it's not the risk that underwriters agreed to bargain to cover in this case. With respect to the public policy analysis, not only do we contend that the regulations requiring insurance don't say anything about full compensation for the victim, as in the FRA, as in the UIM statute, there are other statutes referenced in the briefing. The vulnerable adult statute, which specifically applies only to those in a relationship with the vulnerable adult, not at issue here. They also raise some general statements in the legislature regulations talking about how residents have a right to be protected from abuse, but that statute also says that in the context of the employees of the particular home. Now with respect to whether that this particular exclusion is aimed at a specific group of people, and directed at an additional risk for the insurance company, if you look at the language of the exclusion, it does no such thing. It doesn't apply because there's any particular injury like the Mendoza case. It doesn't apply to any particular class of people at all. Someone could walk into the group home from off the street and be assaulted by a resident there and the exclusion would still apply. I think the exclusion is squarely directed at the type of risks that all insurance companies seek to avoid. There's a statute in Washington discussing that very thing. Counsel, I'm looking at the language at ER 14, which is page 4 of the district court's – actually, it's the magistrate judge's summary judgment ruling, which quotes the language of the exclusion from your client's policy, and it basically focuses on the term physical abuse, which as I understand it means abuse that is intentionally caused. As I read that exclusion, it does seem to say that if we determine that the wrong was the result of physical abuse, then there's no liability at all. Correct, Your Honor. So the home would not be covered for errors and omissions in failing to properly supervise the residents because of the fact that the harm was intentionally caused. Am I over-reading the exclusion or is that correct? I do not think you're over-reading the exclusion. I think the exclusion is intended to be focused on the act causing the harm, which is the physical abuse, which is an intentional act. So if we rule in your favor and say, yes, this exclusion applies, then there is no coverage for the group home for negligence in supervision. Not for negligence in supervision generally, but with respect to an injury that was ultimately caused by a third party's intentional physical abuse. We're saying the same thing. I mean, there's no coverage if we decide that this conduct amounted to physical abuse and the theory of liability against the home is failure to properly oversee and supervise the conduct of the residents. I think the exclusion says that any injury that is caused by an act of physical abuse, regardless of any other issue attendant to that, is not covered. And I think that is not the exact question before the court, which is whether there's any kind of enunciated public policy from the Washington legislature that is violated by that exclusion. And we would propose there's no public policy establishing compensation for victims of group, residents of group homes. No matter how vulnerable they are to this type of harm. When you look at the specific language of the applicable, you know, statutes and regulations, they do not talk about full compensation for those who might be residents of group family homes. They are not the same. What do we make of the fact that there are regulations that impose an insurance mandate? So these kinds of operations have to have insurance. And that insurance has to cover some things, including for the general commercial liability requirement, coverage for the acts and omissions of any employee or volunteer. Which is why I was getting back to my question of that's not our scenario necessarily. But as you've said, your company is not the only company. The company's position is that any sort of harm caused by physical abuse, no matter who did it, whether it's the owner of this home, whether it's an employee of this home, whether it's a resident of this home, the home is never going to have coverage. Because the type of risk involved is an intentional physical act of physical abuse. So how does that not run contrary to Washington law's mandate of insurance to cover things of that nature? These mandates of insurance do not, it's not the same as providing for full compensation of the victim of an act. In this case, the act wasn't even perpetrated by the home. It was perpetrated by another third party. This question may take it to a level of absurdity, but it seems like what you're saying is it's perfectly fine if the law says you must have insurance, and at the same time for the insurance  I think there's multiple examples of statutes that require industries to carry insurance for negligent acts, and that does not mean that there aren't exclusions that are applicable in those industries. Our briefing has listed out numerous exclusions in UIM policies, for example, where the victim is not going to be covered by some valid reason that's not in violation of any public policy of Washington state. I think if there's not a public policy at play, courts in Washington state treat insurance policies as contracts, and with respect to exclusions they will be upheld unless there is some specific declaration of legislative intent that's violated. But if the legislative intent was to protect a particularly vulnerable group of citizens, residents of group homes, who might be injured by the actions of either employees or third parties, it does seem that if we grant your declaratory judgment, it's going to render the insurance that the group home thought it was buying somewhat illusory in that the residents who were injured are not going to be covered if we determine that they were negligent. Your Honor, I do not believe that the policy would be rendered illusory. The policy still covers injuries that are caused by negligent acts. It does not cover injuries that are caused by intentional acts like physical assault. I think there are cases the court must look to which reinforces Washington state's consideration and concern for the actual act that causes the injury. For example, in Brousseau, which involved a man who shot somebody allegedly in self-defense, and he did so deliberately. And the case primarily concerned the insuring clause, which only covered occurrences which are accidents. And the court said, you know, numerous Washington courts have said any time a deliberate act is performed, there is no accident and therefore coverage was not triggered. That court also acknowledged that it is within public policy for insurance companies to not cover intentional conduct because we don't want to encourage people to commit acts of violence thinking that it would be covered by insurance. Could they come and buy an intentional act coverage policy from you? Or you just don't offer it? Actually they did purchase a certain kind of intentional act coverage from underwriters, which was the sexual misconduct coverage. I think the court need to look at the sexual misconduct endorsement. Well, actually if you look at any CDL policy, there is a certain type of coverage for limited intentional torts, which they're usually called personal injury coverages such as wrongful entry, libel, slander. Those are usually separated in an endorsement or in a different section of the policy where the intentional... So for intentional physical abuse, apart from the sexual abuse, they can't buy that policy, at least from you. Correct, Your Honor. The scope of the insuring agreement and the risk that underwriters agreed to take on in this case was not injuries that were caused by physical assault or intentional harming of another person. Not just the Rainer case, the court can also look at the Washington Supreme Court decision in Cary v. Allstate, a difficult case where someone was also injured because of a stabbing, which was an assault, and the court upheld the criminal acts exclusion in that case and considered a statute called the Victim's Compensation Act. That was the particular legislation at issue, which certainly makes it sound like there should be room here for compensation of these victims of such crimes, and the court said that's actually not the policy that was encouraged by the legislature of the state of Washington. I think it's the same with respect to the statutes and regulations in this case. I wanted to point out one additional thing about the Rule 28J letter that was sent in with respect to a recent decision out of the state of Washington. That case presents a very different kind of policy than the policy at issue in this case, which is also a claims made policy. The reason coverage was illusory in that case is because it essentially only covered one year of time for a contractor who might have three years over which they would be sued. Yeah, I mean, it was a claims made and a notification within a very short period. Very narrow coverage. That is not at all similar to this policy. We had, A, a retroactive date going back to 2015, but also the issue in that case concerned the actual... You're beyond your time, so... Oh, thank you, Your Honor. I apologize. Yeah, no, we have your arguments, so thank you very much. We'll give you a minute for rebuttal. Thank you, Your Honor. I wanted to respond to the argument that the tort claims being a new idea or a new issue on appeal. The district court was briefed on that duty and negligence to protect against and supervise third party conduct. It noted again in his order on reconsideration that it had already been briefed on that. Absolutely not a new issue. Bringing up the preferred contractors case, it is relevant to this case for the same reasons that Wisga and Mendoza are. All three cases relied on a general financial responsibility requirement for insurance or some other financial responsibility instrument and a general public policy of insuring compensation for individuals injured by negligence to override coverage exclusions. And again, the district court conceded there was such a public policy underlying these regulations and that alone is sufficient to override the coverage exclusion in this case. And I see I'm out of time. Okay. Thank you, counsel. Thank you to both counsel for your arguments in the case. The case has now been submitted and we'll move on.
judges: TALLMAN, NELSON, FORREST